Good morning, Your Honor. May it please the Court, Counsel, my name is Grant Collins. I'm here on behalf of Appellants LeadingAge of Minnesota and Care Providers of Minnesota, which are non-profit associations representing long-term care providers throughout the state of Minnesota. And we're here today because the state of Minnesota created a Nursing Home Workforce Standards Board via statute, which is comprised of representatives from labor unions and nursing home employers, as well as three state commissioners that has promulgated an administrative rule. We'll call it here the holiday pay rule that conflicts with federal labor law in violation of the Supreme Court standards in Garmin, as well as unduly interfering with and conflicting with the process of collective bargaining in violation of the Supreme Court standards in Machinists. And you may have seen in the party's briefings, Your Honors. I want to get clarified. This is a jurisdiction issue, right? You have pleaded NLRA preemption as the basis for federal jurisdiction? Correct, Your Honor. So all we have on appeal is that question. In other words, if it is not preempted, then the dismissal is not up for review on the merits somehow. Correct, Your Honor. It was dismissed on a Rule 12 motion, and so we don't have the benefit of any record. We simply have the plaintiff's complaint or the appellant's complaint. We did bring a motion for a temporary restraining order. However, the district judge decided on the motion to dismiss that the claims were not viable, i.e., that they were not preempted by neither Garmin nor Machinists. And so now we are here arguing that the district court's decision should be reversed and the court should be ordered to consider plaintiff's motions for a temporary restraining order and injunction. As I was saying, Your Honor, the parties sort of presented Machinists and Garmin in different orders. I'll present the two arguments in the order that I think makes the most sense to the court, which is to start with Garmin. And Garmin, I would say, is a little stronger, a little more clear standards for the court to apply than Machinists, which is a little more amorphous. And we have to, as the district court recognized, kind of analogize to different cases from our sister circuits because we don't really have good standards either from the Supreme Court or from previous Eighth Circuit decisions. So on Garmin, in order to show Garmin preemption, the plaintiffs must, one, advance an interpretation of the National Labor Relations Act that has not been either authoritatively rejected by the courts or by the NLRB, the National Labor Relations Board, and offer enough evidence to enable the court to find that the NLRB, the agency, the federal agency tasked with interpreting federal labor law, could reasonably uphold the claim. We cited in our briefing an Idaho building and construction case, which noted that this is not a demanding standard. In that case, Your Honors, the State of Idaho had passed a law saying that employers may not make contributions to, they call them job targeting funds. You'll get a lot of labor law today, so I hope you have your seat belts on. But that has actually been held to be protected by the National Labor Relations Act. And so there was a claim seeking to have it held to be preempted under Garmin, which the Ninth Circuit did eventually in the Idaho building and construction trades. Here, I think where there's a difference of opinion, I think the nub of the issue is how strict is the standard? The employers here simply need to show that what they allege to be preempted is arguably protected by the National Labor Relations Act. So if we can show that what the state is regulating is either authorized or prohibited by the National Labor Relations Act, the claim is preempted. Must it be something that creates a conflict with your client? In other words, can you hypothesize a conflict with the National Labor Relations Act that some other employer might have? Or do you actually have to point to something that says, if this goes into effect, it will create a problem from a labor law perspective for us? And I think the latter and not the former. I think you can hypothesize in that the standard laid down by the Supreme Court talks about it authorizing or prohibiting something that's protected by the National Labor Relations Act. So it doesn't actually require that it command a violation of the National Labor Relations Act. Because the state spends a lot of time talking about, well, this doesn't compel us to negotiate with unrepresented workers. It doesn't compel us to do that. But that's not the question for the court. I've got to get this down precise again. The time and a half rule is probably your client's biggest objection. And it's putting Garmin aside. It seems to me that basic principle is clearly machinist preempted. It is a minimum state labor standard. So we are only talking, in my view, about preemption of whether it's Garmin or not. We're only talking about the flexibility time. Correct. Time and date. I apologize. Judge Loken, you are correct. As it relates to Garmin, that applies really to the date flexibility portion. I think that's what the... But we don't have to worry about the time and a half in Garmin. Maybe the arguably protected is clear with the time and a half provision. Then you hit the machinist wall. Then we run into machinist. But I want to finish the thought on Garmin first. Because under, and this is from the text of the rule, it says that you can make modifications to when the holidays occur. It's 11 paid holidays become required in a nursing home. I think what's important is, remember, nursing home is not in any long-term care facility. Nursing home is a very specific area that may be part of a much larger long-term care facility. So there may be an assisted living. There may be an independent living. And then a nursing home. So these are rules that apply just to nursing homes. So maybe, if I can analogize to the hospital context, it would be in the ER. These rules apply in the ER of the hospital, but not on a med-surg unit, not in the clinic, or not anywhere else. So these rules are very specific. And that gets more into the machinist preemption because it's specifically tailored to a small subset. I just want to follow up on the earlier question I had, which is, suppose this is a narrow rule. I understand this is a broad rule. Paying a half is a big thing, even for a particular industry. But what if the rule is so narrow that 99 out of 100 times there's going to be no conflict with the NLRA, that one time out of 100 in the special case there would be a conflict? Would you say the entire thing? Because I want to figure out the – these are judge-made doctrines. Garmin and machinists are – so I want to figure out what the scope of those judge-made doctrines are. And very good question, Your Honor. And I'll just start with neither party is looking to overturn machinist or Garmin. We're stuck with those doctrines. I get that. And I would say on the Garmin side, Garmin is a blunter object. Why? Because we have to protect the National Labor Relations Board. So Garmin would apply in a hypothetical context.  Because we have to make sure that we protect the exclusive jurisdiction of the National Labor Relations Board. So here, the date flexibility, the employer must agree with a majority of the affected nursing home workers. Even though it doesn't compel us to do it, the fact that it authorizes it is what makes it problematic under Garmin.  And really, the whole fundamental – It authorizes what? It authorizes employers to negotiate – and I call it negotiate, that's my term – with their non-union, unrepresented workers about a change in which holidays are paid a time and a half. I understand that, but there has to be a union aspect to the employees, to the negotiations.  And so your point is, Your Honor, that this isn't really a labor organization. I think the state sort of authorizes that as well. That's what the district court held. And what I would say, Your Honors, is I would have you look at the definition under the National Labor Relations Act, the definition of labor organization, which includes – I've read that for 50 years now. And it hasn't changed, Your Honor. I might go back with Garmin in a long, long time. And what I would say is, Your Honor, so in addition to the concern of dominate, which is an 8A3 violation, the fact that we have a group of employees making decisions on behalf of another group of employees, that that runs into Section 7 concerns. And I know that there is case law from the Second Circuit talking about how my clients don't have standing. I don't think it's clear in the rule that they are making decisions on behalf of other employees. The employer is just calling for a vote. Up or down, do you guys want this or not in the majority of rules? And, Your Honor, I would submit that that's not unlike collective bargaining. You know, maybe not the initial part of collective bargaining, but as we get to the end and we say this is our final offer, we say take it to the membership and vote it up and down. That's not uncommon. Yes, but it goes on from there. In the collective bargaining context, the agreement almost always demands. Correct. This is just a vote. And what I would add, Your Honor, is it's just a vote. And, again, I think the state says that in the district court too. It's just a vote. But what I would say is in guidance that may not be authoritative for the state, in guidance proffered by the state that says here's how you effectuate that, it talked about having a meeting, having a vote. You know, again, while it can't be considered on a motion to dismiss, we have affidavits about here's how this process works. If an employer says to its workforce, do you guys want me to have a lunch hour from 11 to 12 or from 11 to 1230? And two-thirds of them say 11 to 12 fits me just fine and then I can finish the day sooner. So the others have already been bargained out? That's a great example, Judge Loken. And what I would say is – I think it's clear that that can be done. Absolutely it can be done. What I would say is it cannot be done by the state of Minnesota passing a rule that says any time you change the lunch hour, you have to have a majority of the workers approve that change. I bet you don't have a case that draws that distinction. I do not have a case that draws that distinction. I don't think the distinction fits analytically with Garmin precedents. Well, and the concept is, at least from the appellant's perspective, is that this group of employees that's created by the state administrative rule is making the decision on behalf of the minority employees. And that runs completely contrary to Section 7, which says employees have a right to bargain collectively, to make a collective decision on behalf of – Well, in my hypothetical, it's the same. Correct. Employees who wanted the extra half hour lose. An employer has said, I'm going to do this or this, and you guys help me. And it does this. And employers do have the ability – I consider it a great example, Your Honor, because employers do have the ability to bargain with a union or with employees as a union, as long as they're bargaining with the majority of workers. Certainly, if it was – depending on the terminology of the collective bargaining agreement, it could be a – my hypothetical could be a mandatory subject of bargaining. And I see I'm near the end of my time. I want to just address machinists, because, again, Garmin is very focused. On machinists, I would encourage the court to look at both the Shannon case and the Bragdon case. And I know that they line up their cases from the Second Circuit, but I would say Shannon and Bragdon stand for two opposite sides of the same coin. And they say that a state law is preempted if it gets too granular. That's Brandon. It gets too granular in terms of we're going to tell every employer what they have to pay their workers. That was the State of California, or at least the municipality in California, adopting a prevailing wage statute. And prevailing wage is a concept that's unique to federal labor law. The Davis-Bacon Act is where it came from. That's where states actually act as purchasers, state contractor, construction. There's many Davis-Bacon laws that California has. There, the State of California municipality adopted a rule saying you have to apply prevailing wage standards to the private sector. Again, not acting as a purchaser, acting as a regulator. And the Ninth Circuit said that that's not okay. What about Fort Halifax? I know you want to reserve some time, but that just seems to squarely govern here. Well, in Fort Halifax and in Metro, the Massachusetts case, the key piece that I think the court should focus on is what is a generally applicable law? Now, generally applicable does not mean that it includes everybody, because Fort Halifax included only employers of 100 or more. But at what point is it not generally applicable? And we submit, Your Honor, that at least on a motion to dismiss, we can establish that it is not a generally applicable law because it applies to a subset of workers, even on a specific site, in a long-term care facility, just workers in one wing of a long-term care facility. So it's a fact issue? I'm saying at least on a motion to dismiss. It's not an issue of law. I mean, it's never going to go away from the court. And we submit, Your Honor, that it shows that this is the law that's prohibited by machinists and not one that is enforceable under Fort Halifax or the Massachusetts case. Thank you, Your Honor.  Good morning, and may it please the Court. Scott Gross Greats on behalf of the appellee. I'm here today to ask this Court to affirm the district court's decision. Both of the appellant's preemption arguments primarily focus on the day flexibility provision of the rule. Ironically... You're looking down and talking soft. Focus what? I think I know what you said, but I didn't hear it. Sorry, I'll speak slower. They focus primarily on the day flexibility portion of the rule. Ironically, that portion of the rule was inserted into the rule for the benefit of the employers to give them the opportunity to modify either the dates or the timing of the holidays in accordance with their own business models. Now, the date flexibility provision here does not change any of the minimum holiday pay under the rules or shift the balance of the bargaining power under machinists. And it does not create a labor organization, authorize employers to dominate or interfere with a labor organization, or force representation upon employees under Garmin. I want to first just address the arguably protected or prohibitive language that Council was speaking about. That language does not expand the pleading's standards. This was a facial challenge to the rule. There were no facts asserted in the amended complaint to establish any sort of hypothetical violations. The arguably protected or prohibited language does not invite an employer to dream up hypothetical future violations and then use those hypothetical violations to find an otherwise state law valid. There's nothing in the date flexibility portion of this rule that requires employers or employees to take any action that would be arguably protected or prohibited under the Section 7 or 8 of the NLRA. Opposing counsel, I asked that series of questions. And opposing counsel says that's necessary because of the arguable sort of coverage point in Garmin. That's necessary to protect the National Labor Relations Act and, you know, give you a chance to respond to that. And one of the terms he kept using is whether arguably authorized or prohibited. And the language here is whether arguably protects or prohibitives. And so the rule here doesn't require anything that's going to violate Section 7 or 8. And what the appellants are really arguing is that, look, we can find a scenario here where if we start taking majority vote and now we decide, well, let's make a group over here to make this representation or let's do something else to create a labor organization. What they're saying is what if we find a way to violate the National Labor Relations Act? So now you have to get rid of this whole state rule. But the state rule doesn't require any of that. And so these hypotheticals and saying, well, what if we do, that is not the basis for the arguably protected or prohibited standard in a Garmin preemption. What do you do, you know, and I was thinking about this this morning, what do you do in a situation, suppose that the collective bargaining agreement said, and I've seen some like this, where it says the following six days will be holidays and you get paid time and a half. And then the state comes in and says, no, you get nine holidays. And the employer says, no, NLRB, like we have a collective bargain agreement. It's enforceable. We're going to give six holidays. You do not get paid for the other three. That was carefully bargained. Is that a problem? Because that's a potential, I mean, maybe that's a contract clause issue. I don't know. But doesn't that seem like a problem to you? So it's not a problem because that goes to the machinist argument. And so it's clear under machinist that minimum labor standards is an area that Congress has chosen not to regulate. And so what we have here is a minimum labor standard that says you're going to get paid time and a half for these 11 days. And if there's six different days in a collective bargaining agreement, the union and the employer are still free to negotiate any sort of additional days or days that aren't covered under the rule. And so that allows the freedom to collective bargain. It doesn't discourage or encourage collective bargaining, even if there's a collective bargaining agreement in place. In regards to, I'm going to go back to Garmin just for a minute, the day flexibility provision doesn't create a labor organization under Garmin. It doesn't create any sort of organization at all. And the NLRA clearly defines what's required for an entity to be considered a labor organization. There needs to be a dealing with the employer. There needs to be a pattern of negotiations between the employees or the entity and the management and some sort of response. It's clear that isolated instances where there's a proposal and a response does not equate dealing with under the NLRA. How much does this isolate? It's once a year, Your Honor, if it happens at all. Once a year for many years. Correct. I would say that is a strain to say that that means it's isolated because it only comes up once a year every year. Well, it's isolated for various reasons, Your Honor. First, that may never come up at all. There's no requirement that the employer has to propose a modification. And then second, if it does come up, it's once a year and it's one issue. That's a good way of assuming management rights are a fiction. I don't understand, Your Honor. Well, you said, well, they don't have to do it so we can do what we want when they choose to. No, the employer doesn't have to modify. There's no requirement that they modify the dates. It's really there for their benefit to, if their business model calls for, there's other holidays that are important. It's a religious organization. Maybe different religious holidays are more important than the ones that have been identified. Their date of, be they begin or end their shifts, may begin at 10 o'clock at night, so you want to pay the employee for the entire shift as a holiday pay, as opposed to starting at midnight to midnight. So it's for the benefit of the employer to have that modification. And then if we move forward to the Section 7 rights that are asserted, those are preserved under the Date Flexibility Rule as well. The employees here vote individually. There's no forced representation upon them. And again, the provision doesn't compel collective bargaining or infringe upon their right to refrain from collective bargaining because as we detailed under the Section 8, there's no labor organization created whatsoever that would bring forth the bargaining. The other thing I want to mention real briefly in regards to Garmin is that a lot of the issues that have brought up, hypotheticals that have been brought up by the appellants, really have come into their briefing based on declarations that were submitted in regards to their request for a preliminary injunction or in response to the standing arguments that were raised below. Those declarations and facts are not part of the amended complaint and they're not before this court for review. Switching over to Machinists. What's your case when you get an interlocutory appeal following a denied or preliminary injunction that is limited to the pleadings? I think what you just said is highly controversial. Whether when the procedure goes from complaint to TRO, to preliminary injunction, to 12B dismissal and appeal. What's the 12B record on appeal? I think there are cases saying it would include the facts developed in the unsuccessful injunction effort. I think once you start moving outside of what's been alleged in the complaint, you move into that summary judgment arena where there's been facts being considered. I've heard it in many cases on this subject and it's far more complex than what you've just asserted. The decision that's before the court is based on the motion to dismiss under 12B-6. Under that standard, it's what's been alleged in the complaint. It's the commissioner's position that these declarations that were submitted for other issues would be considered in regards to the motion to dismiss. In any event, even if they were considered, you've got these hypothetical situations. We've got a facial challenge to the rule here. Again, the rule doesn't compel the employers and employees to take any sort of action. In regards to the machinist, this is a classic example of a minimum labor standard. It applies to unions and non-union workers equally. It doesn't encourage or discourage the collective bargaining. The employers and employees here remain free to negotiate above the minimum holiday pay that's authorized under the rule. Even with the day flexibility provision, the employees are paid for the same 11 holidays, regardless of whether the date or times have been modified. You're still getting paid for 11 holidays at time and a half. The rule here is, appellants would like to argue that the cases are similar to Brogdon and Shannon. The rule here is significantly different and distinguishable from those cases. In Brogdon, there was a state law that the prevailing wage, establishing prevailing wage for a county in private construction. What they did there was they used collective bargaining agreements from the surrounding counties to establish what that prevailing wage in private construction would be. What the court found is that you're using collective bargaining agreements that are negotiated between third parties, other unions, other employers, to establish a prevailing wage. In this case, the board has not used any sort of collective bargaining agreements or information to establish a wage. The wage has already been established by the employers themselves, whether they're union or non-union employers. What the rule does is just say, now there's going to be a minimum holiday pay based on what has already been established by the employer. The rule here is, again, we don't have any Eighth Circuit cases that kind of address this, but the rule is similar to the ones that was upheld in the Ninth Circuit with American Hotel and Lodging and the concerned home care providers, as well as the Second Circuit under the Restaurant Law Center. Ultimately, the rule... I'll just close on two points unless there's additional questions. First, with regards to machinists, the holiday pay rule creates a minimum and neutral floor that's consistent with the metropolitan life in Fort Halifax. It does not shift the balance of bargaining power or displace collective bargaining agreements or even micromanage some bargaining outcomes. The date flexibility provision then simply provides employers with the flexibility to meet those business needs. Under Garmin, the rule doesn't compel dealing. There's no standing body or committee, no representatives, no back-and-forth discussions or bargaining that was required for the pattern of negotiations. A single yes or no vote about the timing of holiday pay is not labor organization conduct. And the employer requesting a vote on the issue is clearly not unlawful domination or assistance. By the way, if you're insisting on strict record on appeal, what is the basis in the rule 12 record for the assertion by the union that this is an employer-friendly provision added at the insistence of employers? Well, there is the... So part of the amended complaint does... refers to the board... The Nursing Home Workforce Standards Board issued a memorandum in December of 2024. And in that memorandum, they have now... The memorandum is in the record or it's just referenced? So there's a... Incorporated in the complaint. So it's incorporated in the complaint. The memorandum is a publicly accessible document on the Department of Labor and Industries website. Being cited doesn't incorporate it. No, there's a web link in the amended complaint to get you to the document. And what that index says is that the rules are drafted with the understanding that some facilities may want to alter the list of dates and times based on the employees and their business. And the rules are drafted to give flexibility to facilities on how they determine which holiday would be observed. That doesn't support that it was added at the employer's insistence. There's nothing in the record that specifically says it was added to the employer's insistence, but there is... But it's asserted in the union supporting brief. And it was just referenced this morning by you, I think. My reference was that the... You started out saying they're attacking a rule that was put in for their advantage. It was put in for their... To meet their business models is what I stated. And if that wasn't clear, it was put in so that the employers could change the dates and times to meet up with their own business models. And that's supported by the board memorandum that is incorporated into the complaint. So we would just ask that the court affirm the district court's order. Thank you. Thank you.  And your honor, I believe I've exhausted my time. I'll give you a minute. Your honor, if I can just respond to two things. One, part of the information that the Nursing Home Workforce Standards Board which issued this rule, how did they get to their rule of 11 paid holidays? Their review includes signed collective bargaining agreements applicable to nursing home workers. So similar to Bragdon, we're going to look at what's already out there in order to develop these standards. So the board itself would actually review information to create these standards. The 11 paid holidays paid a time and a half. That board reviewed collective bargaining agreements along with other information. Where are you getting these facts? So this is from... We're being hewed carefully to the Rule 12 record. I don't necessarily agree to that. What I would say is this is Minnesota Statute 181.213, subdivision 2, which is how the board actually crafts the standards, where they go to actually craft them. And that, again, presents a problem under Bragdon because that's how Bragdon created their rules. And then under Shannon, the Seven Circuits problem with what the state of Illinois did is that they said there was a minimum labor standard. There was a minimum labor standard in Illinois about when breaks needed to occur. And then the state of Illinois inserted itself further and said, well, actually, for people who clean rooms in areas that include Cook County, you have to do X, Y, and Z. And so that sort of assertion is what we're claiming is occurring here. It is not just a general labor standard that applies to everybody. And I'll submit, Judge Strauss, that if the state of Minnesota passed a law that said every employee who works on one of the 11 state holidays will be paid time and a half, I don't have an argument for you. If that's what the state does, that's generally applicable. Even if, Your Honor, they said only for employers with 100 or more employees. What they can't do, we submit, is say that for nursing homes, which are a subset usually of a larger long-term care facility, that you have to do it for people who are present on that situs, on that location, during that holiday need to be paid time and a half. That's what they can't do under Shannon and Bragdon and under the Supreme Court's decision in Machinists. Unless the Court has other questions, I appreciate the courtesy, and thank you all for the time today. Thank you, Counsel.